USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
SHARI DOOLEY, :
:
Plaintiff, : 14-CV-4432 (JMF)
:
-v- : OPINION AND ORDER
:
JETBLUE AIRWAYS CORPORATION, :
:
Defendant. :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Shari Dooley brings this employment discrimination suit against her former employer, Defendant JetBlue Airways Corporation ("JetBlue"). By Opinion and Order entered on April 1, 2015, the Court dismissed all of Dooley's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Dooley v. JetBlue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955 (S.D.N.Y. Apr. 1, 2015). (Docket No. 17). On appeal, the United States Court of Appeals for the Second Circuit affirmed the Court's decision in all but one respect: In light of an intervening change in the law, the Circuit concluded that Dooley had adequately alleged a claim of discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and thus vacated and remanded as to that one claim. *See Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16 (2d Cir. 2015) (summary order). JetBlue now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the claim. For the reasons stated below, the motion is granted.

## BACKGROUND

The following facts, taken from the First Amended Complaint and admissible materials submitted by the parties in connection with JetBlue's motion, are either undisputed or described in the light most favorable to Dooley as the non-moving party. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Dooley began working as an Inflight Crewmember (that is, a flight attendant) for JetBlue on or about June 21, 2006. (Docket No. 57 ("Olsen Aff."), Ex. 57 ("Progressive Guidance Report"), at JB000153). Approximately seven years later, on May 29, 2013, Dooley was injured while on the job when her hand was caught between a service cart and a galley counter. (Docket No. 55 ("Pl. 56.1 Resp.") ¶ 15). After taking a medical leave to recover (Olsen Aff., Ex. 32), Dooley's physician cleared her to work full-time with restrictions on July 22, 2013. (Olsen Aff., Ex. 30). Two days later, pursuant to its policies for employees who have sustained an on-the-job injury, JetBlue offered Dooley a "Light Duty/Transitional Duty" position as a "Greeter" at John F. Kennedy International Airport in New York. (*Id.*; Docket No. 51 ("Lepore Aff."), Ex. B ("Crewmember Blue Book"), at JB000481-82). Dooley accepted that position and returned to work on July 29, 2013. (Olsen Aff., Ex. 31). On July 30, 2013, however, Dooley's transitional duty supervisor requested that she be removed from her position for "sitting next to kiosks" while on duty. (Olsen Aff., Ex. 36). That same day, Dooley's supervisor called to tell her she did not need to report for her light duty position the following day. (Olsen Aff., Ex. 52).

More significantly, on August 2, 2013, JetBlue suspended Dooley without pay, citing her "dependability" record. (Olsen Aff., Ex. 53; Progressive Guidance Report, JB000153-54). In particular, JetBlue maintained that — even before her injury and medical leave — Dooley had accumulated six "unavailable for assignment" ("UNA") "dependability occurrences."

(Progressive Guidance Report, JB000153). Under JetBlue's policies, an Inflight Crewmember who accrues six UNAs — defined as occasions "when an Inflight Crewmember is unavailable for an assignment as a result of an unusual circumstance," such as "a flat tire, death of relatives not covered by JetBlue's bereavement policy or a commuting issue" — within a rolling twelve-month period is eligible for employment review and termination. (Lepore Aff., Ex. E ("Inflight Supplement"), at JB000555-60). Dooley contended that at least two of her absences — one, due to a car accident, and another, due to her responsibilities as the executor of her mother's estate — should not have been coded as UNAs, but JetBlue ultimately rejected those contentions and terminated Dooley on September 12, 2013. (Lepore Aff., Ex. R, JB000182-83; Olsen Aff., Ex. 86). Dooley appealed her termination internally, but it was upheld. (Olsen Aff., Ex. 80).

Thereafter, Dooley filed this lawsuit, alleging discrimination and retaliation claims under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as failure-to-accommodate and discrimination claims under the ADA. (Docket No. 10). As noted, on April 1, 2015, the Court dismissed all of Dooley's claims. *See* 2015 WL 1514955, at *1. On appeal, the Court of Appeals largely affirmed, but it vacated the Court's dismissal of Dooley's ADA discrimination claim and remanded for further proceedings. *See Dooley*, 636 Fed. App'x at 18. To the extent relevant here, the Circuit noted that, several months *after* this Court's dismissal, it had held that to survive a motion to dismiss, a plaintiff alleging employment discrimination "'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* at 21, 22 n.1 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). The Circuit concluded that Dooley had done so, citing her allegation that JetBlue had deviated from its multi-step "progressive discipline policy regarding dependability" by proceeding directly to her termination. *Id.* at 21. "When coupled with the closeness in time between the injury that caused

3

her alleged disability and JetBlue's initiation of the process that ultimately resulted in her firing," the Circuit continued, "these allegations give plausible support to a minimal inference of discriminatory motivation." *Id.* (internal quotation marks omitted). Notably, the Circuit observed that this Court's dismissal of Dooley's ADA discrimination claim "under the pre-existing law of this Circuit may very well have been appropriate." *Id.* at 22 n.1.

## LEGAL STANDARDS

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination claims under the ADA are analyzed using the well-established burden-shifting scheme established in *McDonnell Douglas Corp. v. Green* , 411 U.S. 792, 802-04 (1973). *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Under that scheme, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA (or perceived to be so by her employer); (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse employment action "took place under circumstances giving rise to an inference of discrimination." *Id.* If the plaintiff succeeds in establishing a *prima facie* case, the burden of production then shifts to the defendant, which must articulate a legitimate nondiscriminatory reason for the adverse employment action. *See id.* If the defendant does so, the burden then shifts back to the plaintiff, who must prove that the adverse employment action was motivated at least in part by impermissible discrimination. *See id*. (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

As a general matter, summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23). Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed. *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines. Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the

material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation and internal quotation marks omitted). That is, "[a] plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (alterations in original) (internal quotation marks omitted).

## DISCUSSION

Applying the foregoing standards, Dooley's sole remaining claim fails for three reasons. *First*, she fails to establish a *prima facie* case of discrimination because she cannot demonstrate that she was "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." *Davis*, 804 F.3d at 235. Significantly, there is no dispute that one of the essential functions of the Inflight Crewmember job at JetBlue is an ability to "lift[] carry-on bags into overhead bins." (Docket No. 50 ("Def. 56.1") ¶ 20). JetBlue's job description provides, as a "minimum qualification[]" for the position, that an Inflight Crewmember must be able to "lift fifty (50) pounds from floor to above the shoulders." (Olsen Aff., Ex. 2, at 1-2; *see id.* (noting that Inflight Crewmembers are required to engage in "[h]eavy lifting, pushing or pulling of objects up to 100 pounds occasionally and/or up to 50 pounds frequently")). And Dooley herself admitted that being a flight attendant requires lifting over ten pounds. (Lepore Aff., Ex. C ("Dooley Dep."), at 47). It is also undisputed that, as a result of her injury, Dooley was unable to perform that essential function. Indeed, Dooley admitted in her deposition that she "still" could not "reach completely above [her] head" or carry anything "over 10 pounds, with [her] right hand." (*Id.*). Based on her own admissions, therefore, Dooley cannot establish that

6

she is "otherwise qualified to perform the essential functions of the job" of Inflight Crewmember. *See, e.g.*, *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 281 (E.D.N.Y.) (granting summary judgment on an ADA discrimination claim on the ground that the plaintiff, "by his own admissions, . . . could not perform the essential functions" of his job "and, as such, he was not 'otherwise qualified' under the ADA"), *aff'd*, 205 F.3d 1323 (2d Cir. 1999).[1]

Notably, Dooley herself does not dispute that proposition. (*See* Docket No. 56 ("Pl. Mem."), at 8 (conceding that Dooley "was disabled from" her job as an Inflight Crewmember "and could not return to it")). Instead, she contends that "the job" for purposes of the analysis is not the Inflight Crewmember position that she had held before injury, but the Greeter position that she held just before her termination. (Pl. Mem. 8-9). That argument, however, is contradicted by Dooley's Complaint, which alleges that Dooley was an Inflight Crewmember and compares her treatment to the treatment of other Inflight Crewmembers. (Docket No. 10, ¶¶ 11, 27-28). More importantly, it is contradicted by the evidence. JetBlue's employee manual, for example, provides that "Light Duty/Transitional Duty positions are intended to be temporary, with a maximum duration of 90 days," after which an Inflight Crewmember must either "return to Full Duty status" or "be placed out on Workers' Compensation." (Crewmember Blue Book, JB000481-82). And Dooley herself testified that her role as a Greeter was only "transitional" for the purposes of returning to her "regular job" and that "[m]y job wasn't a greeter. I was a flight attendant." (Dooley Dep. 53). Finally, when Dooley was terminated, it was by her Inflight

---

[1] The fact that Dooley sustained her disabling injury while on duty at JetBlue is immaterial. *See, e.g.*, *Desmond v. Yale-New Haven Hosp, Inc.*, 738 F. Supp. 2d 331, 343-46 (D. Conn. 2010) (finding that a physician assistant who could not use her hands as a result of a fall on her employer's property was unable to perform the essential functions of her position and therefore unable to make a *prima facie* showing of disability discrimination); *Morris v. Town of Islip*, No. 12-CV-2984 (JFB) (SIL), 2014 WL 4700227, at *11 (E.D.N.Y. Sept. 22, 2014) (rejecting a discrimination claim by a plaintiff who became disabled due to an on-the-job injury).

7

supervisor, who supervised approximately 130 employees — all of them flight attendants. (Lepore Aff., Ex. D, at JB000212; Lepore Aff., Ex. F, at 9).[2]

*Second*, and in any event, even if Dooley could establish that she is "otherwise qualified," she fails to make out a *prima facie* case of discrimination for another reason: There is insufficient evidence for a reasonable jury to conclude that she was terminated "under circumstances giving rise to an inference of discrimination." *Davis*, 804 F.3d at 235. Significantly, in arguing otherwise, Dooley leans heavily on the Second Circuit's summary order, contending that she has already "demonstrated JetBlue's discriminatory intent" under the ADA by alleging that JetBlue deviated from its "progressive discipline policy" in terminating her and that her injury and termination were close in time. (Pl. Mem. 7, 11). That contention, however, rests on a gross mischaracterization of the Second Circuit's ruling and a profound misunderstanding of the relevant legal standards. Applying the Rule 12(b)(6) standard, the Court of Appeals was required to treat the allegations in Dooley's Complaint as true and considered only whether those allegations gave "*plausible* support to a *minimal* inference of discriminatory motivation." *Dooley*, 636 Fed. App'x at 18 (emphasis added) (internal quotation marks omitted). To survive summary judgment, by contrast, Dooley must point to sufficient evidence to support the essential elements of her claim — including, among other things, the fifth element of a *prima facie* case of discrimination.[3]

---

[2] In the alternative, Dooley appears to argue that JetBlue was required to accommodate her disability by allowing her to perform a different job — as a Greeter or otherwise. (Pl. Mem. 8). That is incorrect. *See, e.g.*, *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 261 (E.D.N.Y. 2015). In any event, Dooley's failure-to-accommodate claim under the ADA was previously dismissed and that dismissal was affirmed by the Second Circuit. *See Dooley*, 636 Fed. App'x at 18.

[3] That Dooley reads far too much into the Second Circuit's ruling is made manifest by that Court's observation that dismissal of Dooley's disability discrimination claim "may very well have been appropriate" under the law of this Circuit in April 2015. *Dooley*, 636 Fed. App'x at

She fails to do so. First and foremost, the evidence does not substantiate the Complaint's allegation — upon which the Second Circuit relied when it vacated this Court's earlier decision — that JetBlue deviated from its "progressive discipline policy." For one thing, JetBlue's own policy provides that each step in the process is merely "suggested" and "can be accelerated at any time"; permits JetBlue to administer progressive guidance "as it deems appropriate under the circumstances"; and contemplates that a crew member may be "suspended without pay pending an investigation at any time, without any previous Progressive Guidance having been taken under these guidelines." (Crewmember Blue Book, JB000448-51). For another, the policy explicitly provides that, when an Inflight Crewmember accrues additional "occurrences" before she has an "opportunity to meet with [her] Inflight Supervisor," the Supervisor should skip to the step of the policy that applies to the total number of occurrences at the time of the meeting. (Inflight Supplement, JB000559). Here, although there is some dispute over whether Dooley's Inflight Supervisor made efforts to meet with Dooley about her dependability record earlier (*see* Pl. 56.1 Resp. 110; Def. 56.1, ¶ 86), there is no dispute that the Supervisor contacted her for the first time on July 25, 2013 (one week before Dooley's suspension), at which point Dooley had already accumulated six UNAs — the requisite number for a suspension under the terms of JetBlue's own policy. Accordingly, the evidence does not actually show that JetBlue deviated from its policies or practices as to Dooley. *See, e.g.*, *Mitchell v. N. Westchester Hosp.*, 171 F. Supp. 2d 274, 280 (S.D.N.Y. 2001) (finding that where the defendant employer had a policy of progressive discipline but explicitly reserved the right to bypass the progressive discipline steps,

---

22 n.1. If Dooley's allegations were insufficient under the preexisting Rule 12(b)(6) standard, it follows that she would require additional evidence to support those allegations to survive the Rule 56 standard.

9

its failure to exhaust all progressive disciplinary steps before suspension was not evidence of a pretext for discrimination).[4]

Beyond that, Dooley continues to rely on the alleged proximity between her injury and termination. But temporal proximity alone is rarely enough to establish an inference of discrimination, *see, e.g.*, *Washington v. Garage Mgmt. Corp.*, No. 11-CV-3420 (CM), 2014 WL 2989947, at *9 (S.D.N.Y. July 1, 2014) ("[O]nly a *strong* temporal correlation, standing alone, can sustain an inference of discrimination." (citing cases)), and — despite Dooley's suggestions to the contrary (Pl. Mem. 11) — the Second Circuit did not hold otherwise on appeal, *see Dooley*, 636 Fed. App'x, at 21 (holding that temporal proximity, *when coupled with* Dooley's allegation that JetBlue had deviated from its standard disciplinary policy, was sufficient to survive a motion to dismiss). Moreover, Dooley's suspension occurred approximately two months after her injury, and her termination occurred almost one and a half months thereafter. (Olsen Aff., Ex. 53; Olsen Aff., Ex. 86). Given the absence of evidence that JetBlue deviated from its standard disciplinary procedures, let alone did so on account of Dooley's disability, those gaps in time are not sufficiently short to infer causation or discriminatory intent. *See, e.g.*, *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB), 2007 WL 1174891, at *21 (S.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." (collecting cases)).

---

[4] Nor does Dooley point to any admissible evidence that she was treated differently from other, non-disabled employees. She identifies several alleged "comparators," but her evidence that they were treated differently is rank hearsay. (Pl. Mem. 23-24; Olsen Aff., Ex. 17, at 212-15). And in any event, she alleges that they were treated differently than she on the basis of gender, not disability.

10

Finally, Dooley points to what she characterizes as "a plethora of adverse and patently unfair actions" — particularly, the timing and basis of her removal as a Greeter — as circumstantial evidence of discriminatory motive and pretext. (Pl. Mem. 12-16). Even assuming *arguendo* that JetBlue treated Dooley unfairly in removing her from the Greeter position, however, that is not enough to establish that her termination occurred "under circumstances giving rise to an inference of discrimination." *Davis*, 804 F.3d at 235. Dooley's subjective and conclusory assertions aside, there is nothing in the record that even plausibly suggests, let alone proves, that such treatment was connected to Dooley's disability. *See, e.g.*, *Mohawk v. William Floyd Sch. Dist.*, 13-CV-2518 (JS) (GRB), 2014 WL 838162, at *3 (E.D.N.Y. Mar. 3, 2014) (dismissing a claim where the plaintiff "fail[ed] to allege any facts, besides his own subjective belief, that plausibly suggest that . . . [his] termination [was] in any way connected to his race, color, or national origin"); *Brodt v. City of N.Y.*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("[A] plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination." (internal quotation marks omitted)); *see also, e.g.*, *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (noting that the non-moving party "cannot defeat" a summary judgment motion "by relying on the allegations in [its] pleading or on conclusory statements" (citation omitted)).

*Third*, and relatedly, even if Dooley could establish a *prima facie* case of discrimination, her claim would fail at the third *McDonnell Douglas* stage because JetBlue proffers a legitimate, nondiscriminatory reason for her termination — namely, the six UNAs that she accumulated before her injury — and there is insufficient evidence to support a finding that JetBlue's reason was pretextual and that Dooley's disability was the real reason for her termination. Notably, Dooley does not dispute that JetBlue correctly attributed five UNAs to her. And while she does

11

contest the accuracy and fairness of one UNA — for her absence on December 10, 2012, allegedly to attend to her responsibilities as the executor of her mother's estate — she does not dispute that she failed to provide the documentation to support that absence that her supervisor had demanded. (Olsen Aff., Ex. 58, at JB000089). Given that, it is not the prerogative of this Court to second guess the wisdom or fairness of how JetBlue responded to Dooley's absences — unless there is evidence that JetBlue's response was motivated by discriminatory intent, which there is not. *See, e.g.*, *Hernandez*, 100 F. Supp. 3d at 263 (observing that "Federal courts . . . may not sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions" and that "[e]mployers are free to terminate employees for subjective business judgments so long as their actions are not taken for discriminatory reasons" (internal quotation marks and citations omitted) (collecting cases)).

Ultimately, that is the fatal flaw in Dooley's case: Although she cites various ways in which JetBlue allegedly treated her unfairly (from its failure to follow its progressive disciplinary policy, to its conduct in removing her from the position of Greeter, to the coding of her absences, to the handling of her appeal after her termination), there is absolutely no evidence that any of this treatment was motivated by prohibited discrimination, as required to carry her burden at the third *McDonnell Douglas* stage. *See*, *e.g.*, *Hernandez*, 100 F. Supp. 3d at 263; *see also, e.g.*, *Grant v. Cornell Univ.*, 87 F. Supp. 2d 153, 160 (N.D.N.Y. 2000) ("When paired with evidence of an impermissible motivation . . . [evidence of deviation from normal procedures] might support or reinforce an inference of discrimination. Without evidence of discriminatory animus, however, such evidence cannot support civil rights liability.").

## CONCLUSION

In sum, although the *allegations* in Dooley's Complaint, taken as true, may have been enough to "give plausible support to a minimal inference" of discrimination on appeal, the *evidence* in the record, even construed in Dooley's favor, is not enough for her to establish a *prima facie* case of discrimination, let alone to establish that JetBlue actually discriminated against her on the basis of her disability. Accordingly, and for the reasons stated above, JetBlue's motion for summary judgment is GRANTED, and Dooley's sole remaining claim is DISMISSED. The Clerk of Court is directed to terminate Docket No. 48, to enter judgment for JetBlue, and to close this case.

SO ORDERED.

Date: August 28, 2017
New York, New York

JESSE M. FURMAN
United States District Judge